**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 20-cv-00053-REB-STV

DARIN MENAPACE,

    Plaintiff,

v.

ALASKA NATIONAL INSURANCE COMPANY,

    Defendant.

**ORDER DENYING DEFENDANT'S RULE 56
MOTION FOR A DETERMINATION OF LAW**

**Blackburn, J.**

The matter before me is the relief requested in **Defendant's Rule 56 Motion for a Determination of Law** [#66],[1] filed July 24, 2020. I deny the relief sought therein.

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party.

---

[1] "[#66]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A movant who will bear the burden of proof at trial on an issue must submit evidence to establish every essential element of its claim or affirmative defense. ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).[2] Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id.*** at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III.  ANALYSIS

On July 16, 2016, while driving a company vehicle and in the course and scope of his employment, plaintiff, Darin Menapace, was seriously injured when an oncoming car crossed the center lane of Highway 120 in Wyoming and collided head-on with Mr. Menapace's vehicle. Through his employer's Commercial Insurance Policy No. 16D AS 60374 (the "Policy"), issued by defendant Alaska National Insurance Company ("Alaska

---

[2] A claim of entitlement to a setoff is in the nature of an affirmative defense. The defendant thus bears the burden of demonstrating its right to a setoff. ***Johnson v. Industrial Commission of State of Colorado***, 761 P.2d 1140, 1146 (Colo. 1988); ***Safeway, Inc. v. Industrial Claim Appeals Office of State of Colorado***, 968 P.2d 162, 164 (Colo. App. 1998)

National"), Mr. Menapace was entitled to workers' compensation benefits.[3] To date, Alaska National has paid $90,771.04 in workers' compensation benefits to Mr. Menapace. (**Resp. App.**, Exh. 3 at 2.)

Mr. Menapace also sought reimbursement from the at-fault driver's insurance carrier, USAA. Mr. Menapace later settled his claim against the other driver for the $100,000 limits of her USAA policy, and Alaska National recovered $46,666.67 in subrogation of the workers' compensation benefits paid. However, Alaska National has stated its intention to take the full $100,000 as a setoff against Mr. Menapace's UIM claim. (**Resp. App.**, Exh. 3 at 3.) In support of that position, Alaska National relies on an exclusion in the Policy which states that the insurer will not pay for "any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' [sic] compensation, disability benefits or similar law." (**Motion App.**, Exh. B ¶ D.2. at 2 of 5 [AlaskaNational_00088].)

Mr. Menapace's damages were in excess of the $100,000 bodily injury limits of the at-fault driver's USAA policy, and he requested Alaska National open an underinsured motorist ("UIM") claim.[4] Following mediation of that claim, Alaska National paid him $150,000 in UIM benefits. This lawsuit, alleging claims for breach of contract and statutory and common law bad faith against Alaska National, followed.

---

[3] Alaska National has not submitted that part of the Policy which sets forth an employee's entitlement to workers' compensation benefits. Nevertheless, it appears undisputed that Mr. Menapace was entitled to and did receive such benefits from Alaska National.

[4] The Policy provides up to $1 million in UIM benefits per accident.

3

Although Alaska National frames the issue as a matter of its putative subrogation rights, in effect what it seeks by this motion is a determination that it is entitled to a setoff for the workers' compensation benefits it has paid Mr. Menapace against any UIM benefits he might recover in this case. Because such an outcome is contrary to public policy as expressed by the Colorado legislature and interpreted by the Colorado courts, I deny the motion.

Under Colorado law, an insurer who pays workers' compensation benefits on behalf of an injured employee is subrogated to the rights of the injured employee against the "third party causing the injury." §8-41-203(1), C.R.S. As interpreted by the Colorado Court of Appeals, however, a UIM insurer in not a third-party tortfeasor to whom the statute applies. ***Colorado Insurance Guaranty Association v. Menor***, 166 P.3d 205, 213 (Colo. App. 2007); ***McMichael v. Aetna Insurance Co.***, 878 P.2d 61, 64 (Colo. App. 1994), *aff'd*, 906 P.2d 92 (Colo.1995); ***State Compensation Insurance Fund v. Commercial Union Insurance Co.***, 631 P.2d 1168, 1169 (Colo. App. 1981); ***Nationwide Mutual Insurance Co. v. Hillyer***, 509 P.2d 810, 811 (Colo. App. 1973). Instead, and unlike a third-party tortfeasor, "[t]he liability of a UM/UIM insurer to the injured party is contractual, and the workers' compensation insurer does not become a third-party beneficiary under the contract." ***Menor***, 166 P.3d at 213. ***See also McMichael***, 878 P.2d at 64.

This interpretation of the interplay between a workers' compensation carrier's right of subrogation and an insured's entitlement to UIM benefits is not unique to just Colorado. Indeed, as the Tenth Circuit has noted, all jurisdictions which have confronted this issue

4

> seem to give the same answer: a workmen's compensation carrier's subrogation rights do not extend to actions based on uninsured motorist policies. The common thread of analysis in all these cases is that under workmen's compensation statutes with similar language subrogation is allowed only for actions in tort; and actions based on uninsured motorist policies sound in contract, not tort.

*Knight v. Insurance Co. of North America*, 647 F.2d 127, 128 (10th Cir. 1981) (interpreting Kansas law and citing cases from other jurisdictions). Thus, despite the absence of a definitive statement on the subject from the Colorado Supreme Court, I have little trouble in concluding, based on the relevant appellate court decisions, appellate decisions in other states on similar questions, and "the general weight and trend of authority" in the relevant area of law, *see Wade v. EMCASCO Insurance Co.*, 483 F.3d 657, 666 (10th Cir. 2007), that a workers' compensation insurer's right of subrogation does not extend to UIM benefits.[5]

In the face of this statutory and interpretive authority, Alaska National's suggestion that the Colorado Supreme Court has overruled these precedents is utterly meritless. First, in neither of the two decisions on which Alaska National relies – *Sunahara v. State Farm Mutual Automobile Insurance Co.*, 280 P.3d 649 (Colo. 2012), and *American Family Mutual Insurance Co. v. DeWitt*, 218 P.3d 318 (Colo. 2009) – was the Court asked to interpret the workers' compensation subrogation statute or consider its interplay with a claim for UIM benefits. Moreover, and at best, the

---

[5] Similarly, because workers' compensation benefits are received as a result of an employee's contract with its employer, such benefits fall within the exception to Colorado's collateral source rule which exempts benefits "paid as a result of a contract entered into and paid for by or on behalf of such person." § 13-21-111.6, C.R.S.  *See Adamscheck v. American Family Mutual Insurance Co.*, 818 F.3d 576, 584 (10th Cir. 2016) (citing *Combined Communications Corp., Inc. v. Public Service Co.*, 865 P.2d 893, 902 (Colo. App. 1993)).

putatively critical language of these cases does little more than define the right of subrogation, *where it exists*, as the right to "stand in the shoes" of the subrogee. ***See Sunahara***, 280 P.3d at 657; ***DeWitt***, 218 P.3d at 323. Because a workers' compensation carrier has no right of subrogation with respect to a claim to UIM benefits, however, these decisions are irrelevant here.

The matter becomes even clearer when one considers Colorado's UIM statute, which provides, relevantly, that "[t]he amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage . . ." §10-4-609(1)(c), C.R.S. "Any other coverage" has been defined to include workers' compensation benefits. ***Adamscheck v. American Family Mutual Insurance Co.***, 818 F.3d 576, 583 (10th Cir. 2016); ***Hillyer***, 509 P.2d at 811; ***American Family Mutual Insurance Co. v. Ashour***, 410 P.3d 753, 758 (Colo. App. 2017).

"Where there is a conflict between an insurance policy and a statute, the statute controls." ***Pacheco v. Shelter Mutual Insurance Co.***, 583 F.3d 735, 740 n. 8 (10th Cir. 2009). ***See also DeHerrera v. Sentry Insurance Co.***, 30 P.3d 167, 173 (Colo. 2001) ("An insurance contract that denied [sic] statutorily mandated coverage is void and unenforceable."). Accordingly, the provision of the Policy which purports to absolve Alaska National from paying for "any element of 'loss' if a person is entitled to receive payment for the same element of 'loss' under any workers' compensation, disability benefits or similar law," is contrary to the public policy of Colorado, and thus unenforceable. ***See Adamscheck***, 818 F.3d at 582; ***Caldwell v. GEICO General Insurance Co.***, 2010 WL 865773 at *11 (D. Colo. Mar. 8, 2010); ***Aetna Casualty &***

*Surety Co. v. McMichael*, 906 P.2d 92, 100 (Colo. 1995). Alaska National therefore is precluded from taking a setoff from Mr. Menapace's UIM benefits.

Alaska National nevertheless insists the result should be different here because it is both the workers' compensation and the UIM insurer. I am unpersuaded. While double recovery is to be avoided, *Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302, 1308 (Colo. 1993), the recovery of benefits which merely overlap is permissible, *Toy v. American Family Mutual Insurance Co.*, 2014 WL 321213 at *10 (D. Colo. Jan. 29, 2014); *Calderon v. American Family Mutual Insurance Co.*, 383 P.3d 676, 679 (Colo. 2016).[6] Thus, the relevant inquiry is not whether the insurer is the same, but whether the benefits cover the same element of loss. Indeed, although Alaska National places much reliance on the appellate court's decision in *Levy v. American Family Mutual Insurance Co.*, 293 P.3d 40 (Colo. App. 2011), the court there actually distinguished the matter before it from situations in which benefits are merely overlapping rather than duplicative. *Id.* at 48 (distinguishing *Barnett v.*

---

[6] In *Calderon*, the Colorado Supreme Court noted that, in addition to the fact that the insured's UIM and MedPay benefits were merely overlapping rather than duplicative, he also paid separate premiums for those coverages. *Calderon*, 383 P.3d at 679 ("[W]hile double recovery is disfavored, so is payment of duplicative premiums."). Although this rationale appears merely to buttress the Court's conclusion, to the extent a finding that separate premiums were paid is required, Alaska National has not countered Mr. Menapace's evidence and argument suggesting separate premiums in fact were paid for UIM and workers' compensation coverages. (*See* **Resp.** at 5 ¶ & **Resp. App.**, Exh. 4.) Instead, it claims that because the Policy purports to exclude UIM coverage for workers' compensation events, no premium has been paid for such benefits. (**Reply** at 2 ("As a result of that limitations provision, only the policy's workers-compensation coverage pays benefits for worker-compensation events. The UIM section of the policy does not respond to workers-compensation events.")). Obviously, however, this argument evades the question whether separate premiums actually were or were not paid. Moreover, this issue may be irrelevant in the context of workers' compensation benefits, as to which the employee does not pay premiums but rather gives "consideration in the form of his employment services." *Scholle v. Delta Air Lines, Inc.*, 2019 COA 81M, ¶ 33, as modified on denial of reh'g (Colo. App. June 20, 2019), *cert. denied, cross-petition for cert. granted*, (No. 19SC546) 2019 WL 5922201 (Colo. Nov. 12, 2019). Regardless, because this issue is not adequately developed as a matter of either argument or evidence, and I do not consider it further.

***American Family Mutual Insurance Co.***, in which the Supreme Court held that disability benefit payments overlap, but are not duplicative of, UIM benefits, and therefore cannot be offset).[7]  ***See also Colorado Compensation Insurance Authority v. Jorgensen***, 992 P.2d 1156, 1163 (Colo. 2000) (noting "section 8-41-203(1) does not subrogate the insurer to any right beyond the claimant's rights to economic recovery").

That distinction is applicable here; while UIM benefits cover all damages, both economic and non-economic, which an insured might sustain as the result of an accident involving an underinsured motorist, *see* § 10-4-609(1)(a), C.R.S.; ***Calderon***, 383 P.3d at 679, workers' compensation benefits are limited to damages occasioned by "physical impairment and disfigurement, and disability payments as compensation for lost wages" and exclude non-economic damages, ***Chavez v. Kelley Trucking, Inc.***, 275 P.3d 737, 739 (Colo. App. 2011).  ***See also McMichael***, 878 P.2d at 64 ("[W]orkers' compensation benefits . . . do not include all the elements of damages recoverable under UM/UIM coverage.").  Yet Alaska National has made no attempt to delineate what portion, if any, of Mr. Menapace's UIM benefits may coincide with the elements of loss for which workers' compensation benefits were paid.  ***See Toy***, 2014 WL 321213 at *10.  It therefore has not shown that it is being asked to "pay twice for the same loss," ***Adamscheck***, 818 F.3d at 584, and accordingly is not entitled to a setoff as a matter of law.

---

[7] Moreover, the ***Levy*** court had no occasion to address the applicability *vel non* of section 10-4-609(1)(c), C.R.S., because the plaintiff waived any argument premised on the statute.  ***Levy***, 293 P.3d at 48.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** that the relief requested in **Defendant's Rule 56 Motion for a Determination of Law** [#66], filed July 24, 2020, is denied.

Dated September 30, 2020, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge