# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00053-REB-STV

DARIN MENAPACE,

      Plaintiff,

v.

ALASKA NATIONAL INSURANCE COMPANY,

      Defendant.

_____

# ORDER
_____

Entered by Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff's Motion to Strike, or in the Alternative, to Dismiss Amended Counterclaims and New Affirmative Defense Pursuant to Fed. R. Civ. P. 12(b)(6) and (f) (the "Motion") [#146], which was referred to this Court [#147]. The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART AND DENIED IN PART** and Defendant's Amended Answer to Second Amended Complaint, Counterclaims and Jury Demand [#136] is hereby **STRICKEN** without prejudice to Defendant filing a motion for leave to file an amended answer and counterclaims.[1]

_____

[1] "[W]hen the Rule 12(f) motion to strike is not dispositive of any party's claims or defenses, the Magistrate Judge retains authority to enter an order disposing of the motion." *KAABOOWorks Servs., LLC v. Pilsl*, No. 17-CV-02530-CMA-KLM, 2019 WL

## I.    FACTUAL BACKGROUND[2]

The instant lawsuit arises from a claim for underinsured motorist ("UIM") benefits made by Plaintiff Darin Menapace to his employer's insurer, Defendant Alaska National Insurance Company. [#5, 101] On July 16, 2016, Plaintiff was involved in a motor vehicle collision in Wyoming when the driver of another vehicle, Sharon Johnson, crossed the center line into the oncoming lane of travel and collided head-on with Plaintiff's vehicle. [#101, ¶¶ 4-6] At the time of the collision, Ms. Johnson was insured by USAA with policy limits of $100,000. [*Id.* at ¶¶ 9, 22] Ms. Johnson's policy limits were insufficient to compensate Plaintiff for his injuries, damages, and losses from the collision. [*Id.* at ¶ 10] At the time of the collision, Plaintiff was acting within the scope of his employment with Alaskan Brewing, LLC ("Alaskan Brewing"), and thus was an insured under Alaskan Brewing's insurance policy with Defendant, which included workers' compensation coverage as well as UIM coverage in the amount of $1,000,000 per accident. [*Id.* at ¶¶ 11, 12] Alaskan Brewing's policy with Defendant included an endorsement (the "Concealment Provision"), which states in relevant part:

---

1979927, at *1 n.2 (D. Colo. May 3, 2019).  Here, the Court's Order on the Motion is not dispositive of Defendant's affirmative defenses or counterclaims, because the Court is striking Defendant's Amended Answer to Second Amended Complaint, Counterclaims and Jury Demand based upon a procedural defect and without prejudice to Defendant filing a motion for leave to assert the new affirmative defense and counterclaims.  *See Arason Enters., Inc. v. CabinetBed Inc.*, No. 16-CV-03001-PAB-NRN, 2019 WL 7049989, at *6 (D. Colo. Dec. 23, 2019) (construing order striking plaintiff's infringement contentions for failure to comply with local rule "as a non-dispositive action by the magistrate judge"); *Ceja v. Scribner*, No. LACV0700606VBFKES, 2016 WL 3996152, at *6 (C.D. Cal. Jan. 19, 2016) (collecting cases finding that magistrate judge did not exceed authority by denying dispositive motions without prejudice to refile).

[2] The background facts, which the Court accepts as true for purposes of the instant Motion only, are drawn from the parties' pleadings and the documentary evidence submitted in connection with the Motion.

We will not pay for any loss or damage in any case of:

    1. Concealment or misrepresentation of a material fact; or

    2. Fraud

committed by you or any other insured ("insured") at any time and relating to coverage under this policy.

[#136 at 39, ¶ 60]

On or about July 14, 2017, Plaintiff—through counsel, Alana Anzalone—put Defendant on notice of his UIM claim.[3] [#101, ¶ 15] Scott Millar was Defendant's internal claims handler for the UIM claim. [*Id.* at ¶ 20] Sometime prior to July 25, 2017, Defendant retained attorney Keith Olivera with the law firm White & Steele, P.C. to assist in the investigation and handling of the UIM claim. [*Id.* at ¶ 39] Plaintiff gave Mr. Millar permission to obtain Plaintiff's worker's compensation claim file, provided Defendant medical records release authorization, and underwent an independent medical evaluation ("IME"). [*Id.* at ¶¶ 21, 30, 34]

On or about October 16, 2017, USAA offered Plaintiff a settlement in the amount of the $100,000 bodily injury policy limits. [*Id.* at ¶ 22] On November 27, 2017, Defendant provided its written consent for Plaintiff to settle with USAA for the policy limits. [*Id.* at ¶ 27] Plaintiff received $55,333.33 of the $100,000 payment from USAA because Defendant claimed a statutory subrogation interest as a result of the funds Defendant paid to Plaintiff for his workers' compensation claim. [#136 at 32, ¶ 17] On June 21, 2018, Plaintiff sent Defendant a detailed summary of his injuries, treatment, impairment,

---

[3] Contemporaneously, Plaintiff was also pursuing a claim for workers' compensation from Defendant—who was also Alaskan Brewing's workers' compensation carrier. [#101,¶¶ 12, 18] Defendant paid Plaintiff over $90,000 in medical billings and indemnity related to the workers' compensation claim. [#136 at 32, ¶ 13]

damages, and losses that resulted from the collision and made a settlement demand in the amount of $500,000 to resolve his UIM claim.  [#101, ¶ 37]  Mr. Millar responded on July 2, 2018, requesting an examination under oath ("EUO"), potentially another IME, and a mediation.  [*Id.* at ¶ 47]  Mr. Millar also informed Plaintiff for the first time that it had retained Mr. Olivera and requested that Plaintiff's counsel communicate directly with Mr. Olivera to schedule and complete the EUO, IME, and mediation.  [*Id.*]

On or about August 20, 2018, Mr. Olivera conducted the EUO of Plaintiff on behalf of Defendant.  [*Id.* at ¶ 55]  On September 6, 2018, Plaintiff provided Defendant another medical records release authorization and, on September 10, 2018, Plaintiff submitted to another IME requested by Defendant.  [*Id.* at ¶¶ 61, 62]  On September 11, 2018, Plaintiff provided Defendant another set of executed release authorizations.  [*Id.* at ¶ 63]

On September 17, 2018, Defendant generated a "serious loss report" regarding Plaintiff's UIM claim and concluded that Plaintiff's total damages from the collision ranged between $300,000 and $350,000.  [*Id.* at ¶ 64]  On or about October 19, 2018, Plaintiff and Defendant participated in a mediation of the claim but were unsuccessful in reaching a mutually agreeable settlement.  [*Id.* at ¶¶ 66, 67]  On October 19, 2018, Defendant agreed to make a payment in the amount of $150,000 in UIM benefits to Plaintiff, after which the parties could agree to negotiate a full and final settlement or Plaintiff could file litigation.  [*Id.* at ¶ 67]  On October 29, 2018, Defendant made the $150,000 payment to Plaintiff.  [#136 at 33, ¶ 20]

On January 29, 2019, Mr. Olivera sent an email to Ms. Anzalone inquiring whether Plaintiff was interested in further settlement discussions or intended to proceed with litigation.  [#101, ¶ 70]  On that same day, Ms. Anzalone responded that Plaintiff had

undergone an MRI and was consulting with an orthopedic surgeon to determine whether additional surgery was required. [*Id.* at ¶ 71] On March 18, 2019, Defendant generated another "serious loss report" and again concluded that Plaintiff's total damages from the collision ranged between $300,000 and $350,000. [*Id.* at ¶ 74] On April 4, 2019, Ms. Anzalone emailed Mr. Olivera to provide some additional medical records and explained that she was still waiting to receive additional medical records and that Plaintiff was still waiting to determine whether another surgery would be required. [*Id.* at ¶ 75] From April through August 2019, Ms. Anzalone and Mr. Olivera exchanged numerous communications regarding additional medical records, including records of Plaintiff's MRI, provided by Plaintiff and Defendant's desire to have those records reviewed by an orthopedic surgeon. [*Id.* at ¶¶ 75-95]

On August 16, 2019, Ms. Anzalone sent Mr. Olivera an email in response to reports Mr. Olivera provided from an independent examiner, which further discussed Plaintiff's alleged injuries and damages. [#136 at 33-34, ¶ 24; #153-1 at 2] In that email, Ms. Anzalone stated:

> [Plaintiff] advised me that his father approached him recently and told him that [Plaintiff's] irritability and anger since the collision should be addressed. [Plaintiff] went to his family doctor who found it necessary he be evaluated by a neuropsychologist. He is in the process of making that appointment and we will be getting his family doctor records showing the referral.

[#153-1 at 2] Defendant contends that this message from Ms. Anzalone was sent "in the context of soliciting additional insurance benefits from [Defendant]" and "notified [Defendant] of [Plaintiff's] assertion the collision caused personality changes and increased anger." [#136 at 34, ¶¶ 25, 27]

On September 6, 2019, Mr. Olivera represented to Ms. Anzalone in an email that Defendant would provide a new offer to Defendant for his UIM claim the following week.

[#101, ¶ 97] No further offer was ever made by Defendant, however. [*Id.* at ¶ 98] Instead, on October 4, 2019, Mr. Millar sent a letter to Plaintiff, contending that the additional information provided in May 2019 did not alter Defendant's evaluation of Plaintiff's UIM claim and stated that Defendant believed that Plaintiff received fair and reasonable compensation for his liability and UIM claims arising from the collision with the payment of $100,000 from USAA and $150,000 from Defendant for the UIM claim. [*Id.* at ¶ 108] Mr. Millar concluded his letter, however, by stating that that if Plaintiff submitted a "reasonable" settlement demand, Defendant would give it prompt and fair consideration. [*Id.*]

On December 5, 2019, Plaintiff filed the instant lawsuit in the District Court for the County of Denver, Colorado asserting claims against Defendant for breach of contract, undue delay or denial pursuant to Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116, and bad faith breach of contract. [#5] On January 7, 2020, Defendant removed the lawsuit to this Court. [#1] On January 14, 2020, Defendant filed an Answer and Jury Demand, which did not assert any counterclaims against Plaintiff. [#11]

On February 27, 2020, Plaintiff served his initial Rule 26(a)(1) disclosures, which—according to Defendant—included records from Denver Neurological Clinic "as documents that [Plaintiff] 'may use to support his claims or defense.'" [#136 at 34, ¶ 30] On April 2, 2020, in response to an interrogatory inquiring about "damages . . . that [Plaintiff] attribute[s] to [the collision]," Plaintiff responded, in part, that he "becomes extremely irritable and frustrated with the cognitive impairments he has suffered as a result of this collision, greatly affecting his relationships with his family and friends." [#153-2 at 3-4; *see also* #136 at 35, ¶ 31] On April 3, 2020, Defendant issued another

"Serious Loss Report," which stated that Plaintiff advised Defendant in August 2019 of his referral to a neuropsychologist as a result of "increased irritability and anger" but that Defendant had not received the records related to that referral. [#136 at 35, ¶ 32] The "Serious Loss Report" stated that Defendant had obtained criminal records showing that, prior to the collision, Plaintiff had been charged "with felony menacing and third-degree assault for domestic violence incidents involving his ex-wife and children" and that Plaintiff "pled guilty to some of the charges."[4] [*Id.*] According to Defendant, on August 17, 2020, Plaintiff produced supplemental Rule 26(a)(1) disclosures that included medical records "relat[ing] to [Plaintiff's] claim regarding his anger issues." [*Id.* at 35, ¶¶ 34, 35]

On August 17, 2020, Plaintiff filed a motion for leave to file a First Amended Complaint. [#71] Plaintiff contended that he sought to amend his complaint "to provide greater specificity and detail as to the bases of his claims, including Defendant's bad faith conduct that [allegedly] has continued into this litigation, and so as to give further notice of the bases of the claims and guide discovery in this litigation" [*id.* at ¶ 4] and also to add a claim for fraudulent inducement, misrepresentation and concealment/insurance fraud [#72-1 at 24]. On September 28, 2020, the Court granted Plaintiff's motion for leave and the First Amended Complaint was entered into the record. [#95, 96] On October 5, 2020, Plaintiff filed an Unopposed Motion and/or Notice to Withdraw Certain Allegations in the First Amended Complaint (the "Motion to Withdraw"), which sought to withdraw certain of

---

[4] The incident referenced in the "Serious Loss Report" took place in December 2015. [#136 at 37-38, ¶¶ 41-52] Plaintiff pleaded guilty to felony menacing and assault charges on August 1, 2016, but received a deferred judgment and, on January 31, 2019, upon completion of his probation, Plaintiff's guilty plea was withdrawn. [*Id.* at 38-39, ¶¶ 53-55] The Court refers to the December 2015 incident and the subsequent criminal proceedings collectively in this Order as the "December 2015 Incident."

the new allegations included in Plaintiff's First Amended Complaint and also to withdraw the new fraud/concealment claim. [#98] To effectuate this withdrawal, the Motion to Withdraw sought leave to file a second amended complaint, which was included as an attachment to the Motion to Withdraw. [*Id.* at 3-4; #98-2] On October 6, 2020, the Court granted the Motion to Withdraw and Plaintiff filed the Second Amended Complaint on October 7, 2020. [#100, 101]

On October 8, 2020, the parties requested that the Court conduct a discovery hearing to address various discovery disputes between the parties and the Court set a hearing for October 20, 2020. [#103] On October 20, 2020, the Court conducted the discovery hearing and, among other issues presented to the Court, were Defendant's request for: (1) Plaintiff's criminal records related to the December 2015 Incident, and (2) records related to Plaintiff's psychological treatment records. [#109] At the hearing, counsel for Plaintiff represented that Plaintiff would "commit to making no further claim [for psychological injury other than] garden-variety emotional distress claims" and would "withdraw any claims on anger issues" and thus argued that neither the criminal records nor the psychological treatment records were relevant. [#121 at 8-10, 17] The Court found that, even if Plaintiff withdrew any claim related to anger issues, the criminal records may be relevant to the extent they were considered by Defendant in its evaluation of the claim and/or for impeachment purposes and thus ordered them produced. [*Id.* at 31-32] The Court ordered the parties to further meet and confer with regard to their dispute regarding the psychological treatment records in light of Plaintiff's representation that he would withdraw any claims based upon anger issues. [*Id.* at 30-31]

Also on October 20, 2020, Defendant filed its Answer to Second Amended Complaint, Counterclaims, and Jury Demand, which, in addition to answering the allegations in Plaintiff's Second Amended Complaint, asserted an additional affirmative defense alleging that Plaintiff's claims are barred because he violated the Concealment Provision of the insurance policy by "knowingly conceal[ing] material facts, including his pre-accident history of anger" and asserted counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing based upon Plaintiff's alleged concealment of his "pre-accident anger issues." [#110]  On November 3, 2020, Plaintiff filed a Motion to Strike, or in the Alternative, to Dismiss New Counterclaims and Affirmative Defense Pursuant to Fed. R. Civ. P. 12(b)(6) and (f) (the "First Motion to Strike"). [#119]

On November 9, 2020, the Court conducted a further discovery hearing to address the parties' dispute regarding Defendant's request for the production of Plaintiff's psychological treatment records. [#129]  The Court found that the Colorado Supreme Court had made clear that mental health records need not be disclosed by a plaintiff where the plaintiff seeks damages only for generic, garden-variety emotional distress. [#138 at 2-3]  The Court found that Ms. Anzalone's reference in her August 16, 2019 email during the claims handling process to Plaintiff seeking treatment for anger issues did not waive Plaintiff's psychotherapist privilege, because the email indicated only that there was a concern that Plaintiff was looking into as a potential additional source of damages. [*Id.* at 5-6]  The Court also found that Plaintiff had not waived the privilege by referencing his increased irritability and frustration in his April 2, 2020 interrogatory response, because the interrogatory could reasonably be interpreted as requesting information

concerning "any damages or issues that [Plaintiff] may be having since the accident" and thus, to truthfully answer, Plaintiff was required to identify all such issues even if he was only pursuing damages for garden-variety emotional distress. [*Id.* at 3-5] Thus, based upon Plaintiff's commitment to only seek damages for garden-variety emotional distress, the Court found that Plaintiff had not waived the privilege and concluded that Plaintiff was not required to produce his psychological treatment records. [*Id.* at 6]

On November 20, 2020, Defendant filed an Amended Answer to Second Amended Complaint, Counterclaims and Jury Demand (the "Amended Answer") [#136], which Defendant contended it was entitled to file "as a 'matter of course,' without seeking leave of the Court or consent from Plaintiff" pursuant to Fed. R. Civ. P. 15(a)(1)(B). [#135 at 1-2] The Amended Answer asserted the same affirmative defenses and counterclaims as Defendant's initial answer to the Second Amended Complaint but added additional factual allegations in support of its counterclaims. [*See* #135-1]

In light of the filing of the Amended Answer, the Court denied Plaintiff's First Motion to Strike as moot.[5] [#137] On December 4, 2020, Plaintiff filed the instant Motion, seeking to strike the Amended Answer or, in the alternative, to dismiss the new affirmative defense and counterclaims based upon the alleged concealment of Plaintiff's pre-accident anger issues. [#146] On December 23, 2020, Defendant filed its response to the Motion [#153], and Plaintiff then filed a reply in support of the Motion [#154].

---

[5] Plaintiff filed an objection to this Court's Order finding the First Motion to Strike moot, which objection is currently pending before the presiding District Judge. [#148]

## II. STANDARD OF REVIEW

### A. Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

Pursuant to Federal Rule of Civil Procedure 12(f), the Court—sua sponte or on a motion made by a party—"may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Court "possesses considerable discretion in disposing of a Rule 12(f) motion to strike" and "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party."  5C Charles A. Wright et al., Fed. Prac. & Proc. § 1382 (3d ed. 2019).

"[A]s a general matter, motions to strike under Rule 12(f) are disfavored." *Broach v. Yegappan*, No. 17-CV-02791-MSK-NYW, 2019 WL 6724246, at *2 (D. Colo. Dec. 11, 2019) (quotation omitted).  Motions to strike thus "are usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Kimpton Hotel & Rest. Grp., LLC v. Monaco Inn, Inc.*, No. CIV.A. 07-CV-01514-W, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008).  "In deciding whether to [grant] a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976)).

### B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under

Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

Through the Motion, Plaintiff requests that the Court strike the Amended Answer or, in the alternative, dismiss the counterclaims and affirmative defense based upon alleged concealment for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [#146] Because, for the reasons explained below, the Court finds

that the Amended Answer should be stricken, the Court does not reach Plaintiff's alternative argument that the new affirmative defense and counterclaims should be dismissed.

Plaintiff argues that the Amended Answer should be stricken in its entirety based upon Defendant's failure to obtain leave to file the Amended Answer as required by the Federal Rules of Civil Procedure [*id.* at 5-8], whereas Defendant contends that it was not required to obtain leave of the Court to file the Amended Answer and, to the extent the Court finds that it was, requests that the Court grant Defendant leave to file the Amended Answer based upon the briefing on the instant Motion [#153 at 4-7]. Plaintiff also contends that certain allegations contained within the Amended Answer should be stricken/removed from the public record because they are scandalous and impertinent. [#146 at 14-15] The Court considers each argument in turn.

### A.    Failure to Comply with the Federal Rules of Civil Procedure

Pursuant to Federal Rule of Civil Procedure 15(a)(3), once an amended pleading has been filed, "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Neither the Supreme Court nor the Tenth Circuit has addressed whether a defendant may file amended counterclaims and new affirmative defenses as of right in response to an amended complaint or whether and to what extent they must seek leave to file an amended pleading pursuant to Rule 15(a)(2).[6]  *See Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-CV-2104-JTF-TMP,

---

[6] Rule 15(a)(2) provides that, absent circumstances that allow amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that the court "should freely give leave when justice so requires."

2020 WL 7332846, at *3 (W.D. Tenn. June 23, 2020), *report and recommendation adopted*, 2020 WL 6694299 (W.D. Tenn. Nov. 13, 2020); *Port-A-Pour, Inc. v. Peak Innovations, Inc.*, No. 13-CV-01511-WYD-BNB, 2016 WL 1258552, at *2 (D. Colo. Mar. 31, 2016); *Woods v. Nationbuilders Ins. Servs., Inc.*, No. 11-CV-02151-CMA-KMT, 2014 WL 1213381, at *1 (D. Colo. Mar. 24, 2014). District Courts considering the issue have adopted divergent approaches. *See Hydro Eng'g, Inc. v. Petter Invs., Inc.*, No. 2:11-CV-00139-RJS, 2013 WL 1194732, at *2 (D. Utah Mar. 22, 2013) ("Federal Courts have taken a wide range of positions in deciding whether a defendant must seek leave of court to add counterclaims when responding to an amended complaint."); *Raymond James & Assocs., Inc.*, 2020 WL 7332846, at *3 (identifying "six competing approaches" taken by courts and describing the caselaw on the subject as "wildly divergent"); *Pereira v. Cogan*, No. 00 CIV. 619 (RWS), 2002 WL 1822928, at *2 (S.D.N.Y. Aug. 7, 2002) (finding that caselaw addressing defendant's right to assert new affirmative defense in response to amended complaint was "all over the map").

Most courts considering the issue have adopted one of the following three approaches. "Under the so-called permissive approach, a defendant served with an amended complaint may amend its answer without leave of court, regardless of the scope of the changes in the amended complaint." *Hydro Eng'g, Inc.*, 2013 WL 1194732, at *2. Other courts, however, have adopted what has been referred to as the "narrow approach," pursuant to which "courts permit such counterclaims as of right only if they directly relate to the changes in the amended complaint." *Id.* "Still other federal courts have struck a balance between the permissive and narrow approaches" by adopting what has been referred to as the "moderate approach," which permits the defendant to add additional

affirmative defenses and or counterclaims where the plaintiff's amended complaint "changes the theory or scope of the case."[7] *Id.* at 3 (quotation omitted). Courts, however, have applied this moderate approach in different ways. Some courts applying the moderate approach have held that "a party may assert new counterclaims without seeking leave of court if the amended complaint changed the theory or scope of the case, regardless of whether the counterclaim relates to the changes made to the amended complaint." *Raymond James & Assocs., Inc.*, 2020 WL 7332846, at *3. Put another way, "[w]hen a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff." *Hydro Eng'g, Inc.*, 2013 WL 1194732, at *3 (D. Utah Mar. 22, 2013) (quoting *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 832 (N.D. Iowa 1997), *aff'd on other grounds*, 205 F.3d 1347 (8th Cir. 2000)). Other courts applying the moderate approach, however, have held that, even where the plaintiff's amended complaint changes the theory or scope of the case, "the scope of permissible new counterclaims must reflect the breadth of changes in the amended complaint." *Raymond James &*

---

[7] Other courts have spurned these three approaches in favor of "simply apply[ing] the Rule 15 standard equally to amended complaints and amended (or new) counterclaims." *Bern Unlimited, Inc. v. Burton Corp.*, 25 F. Supp. 3d 170, 179 (D. Mass. 2014). In *GEOMC Co. v. Calmare Therapeutics Inc.*, the Second Circuit acknowledged these four separate approaches but refused to adopt a single approach that should be applied in all cases. 918 F.3d 92, 100 n.12 (2d Cir. 2019). Instead, the Second Circuit held that "resolution of this issue depends on how far into the litigation the new counterclaim is asserted." *Id.* at 100. "If an amended answer with a new counterclaim is presented at an early stage of the litigation, the new counterclaim may normally be as broad as those filed in response to an original complaint." *Id.* "At a late stage of the litigation, however, a new counterclaim that raises issues beyond the scope of the new claims made in the most recent amended complaint will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation that the court is charged with managing" and thus "should normally not be permitted if it exceeds the scope of the plaintiff's new claims" *Id.*

*Assocs., Inc.*, 2020 WL 7332846, at *3 (quotation omitted); *see also Cieutat v. HPCSP Invs., LLC*, No. CV 20-0012-WS-B, 2020 WL 4004806, at *4 n.7 (S.D. Ala. July 15, 2020) (finding that Rule 15 "contemplate[s] only a 'response to' the amended complaint, not a kitchen-sink outpouring of additional material untethered to the amendment").  In other words, "[i]f major changes are made to the complaint, fairness requires that the defendant be allowed to make major changes, but minor changes [allow for] only minor changes in response." *Raymond James & Assocs., Inc.*, 2020 WL 7332846, at *4.

Courts in this District that have considered the issue have consistently applied the version of the moderate approach that permits a defendant to plead new counterclaims and affirmative defenses without leave of the Court when a plaintiff files an amended complaint that changes the theory or scope of the case, regardless of whether the new affirmative defense or counterclaim relates to the changes made to the amended complaint. *See, e.g., Woods*, 2014 WL 1213381, at *1; *Port-A-Pour, Inc.*, 2016 WL 1258552, at *3; *Dakota Station II Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 14-CV-02839-RM-NYW, 2016 WL 9735776, at *2 (D. Colo. Nov. 4, 2016), *report and recommendation adopted*, 2017 WL 4334068 (D. Colo. Mar. 27, 2017); *Meeker v. Life Care Centers of Am., Inc.*, No. 14-CV-02101-WYD-NYW, 2016 WL 11693715, at *3 (D. Colo. Apr. 11, 2016), *report and recommendation adopted*, 2016 WL 11693705 (D. Colo. June 29, 2016).  This Court agrees with those courts that the moderate approach "strikes the appropriate balance between the narrow and permissive approaches" and thus should be applied in determining whether a defendant may assert new counterclaims and affirmative defenses in response to an amended complaint as of right or must seek leave of the court to do so. *Woods*, 2014 WL 1213381, at *1 (D. Colo. Mar. 24, 2014).  However,

because, for the reasons explained below, the Court finds that Plaintiff's Second Amended Complaint did not change the theory or scope of the case, the Court finds it unnecessary to decide which version of the moderate approach should be applied.

Defendant contends that Plaintiff's Second Amended Complaint "asserts numerous additional facts that materially changed the scope of [Plaintiff's] bad faith claim" and thus, pursuant to the moderate approach, Defendant was entitled to add additional affirmative defenses and counterclaims in its responsive pleading without seeking leave of the Court. [#153 at 5] In support, Defendant emphasizes that the Second Amended Complaint included "a total of 211 allegations—177 more than the original Complaint."[8] [*Id.*] The length of the Second Amended Complaint, however, "holds little to no value in th[e] analysis" of whether the amendment changes the theory or scope of the case, because "[a]n amended complaint often has an increased length because it includes additional information that has either no effect on the scope or theory of the case or in fact narrows the scope or theory."[9] *Hydro Eng'g, Inc.*, 2013 WL 1194732, at *4.

Defendant further contends that the additional factual allegations in the Second Amended Complaint materially changed the scope of Plaintiff's bad faith claim by alleging for the first time that Defendant engaged in bad faith by failing to provide retained Colorado counsel with guidelines and standards regarding the investigation of the claim

---

[8] Although Plaintiff asserted many of these additional facts in its First Amended Complaint, as Defendant rightfully points out, Defendant never filed a responsive pleading to the First Amended Complaint [#153 at 5 n.2], so the relevant comparison in determining whether Plaintiff's Second Amended Complaint changed the theory or scope of the case is with Plaintiff's original Complaint.

[9] The Court notes that Plaintiff's original Complaint was filed in Colorado state court, whereas the Second Amended Complaint was filed after the case had been removed to federal court. This distinction may explain some of the additional length of the Second Amended Complaint compared to the original Complaint.

and by engaging in "fraudulent conduct" by: (1) altering its evaluation of Plaintiff's claim to help it succeed in litigation, (2) inducing Plaintiff into believing that his UIM claim would be honored, (3) misleading Plaintiff's counsel into believing that she had fully complied with Defendant's request for MRI films, and (4) concealing from Plaintiff the fact that it had retained a Colorado lawyer to provide advice regarding the claim. [#153 at 5] The Court disagrees. Plaintiff's Second Amended Complaint did not add any claims for relief or seek additional relief not requested in the original Complaint. [*Compare* #101 *with* #5] Instead, Plaintiff's Second Amended Complaint added factual allegations that provided more specificity to the bases for Plaintiff's claims, including the claim for bad faith, and conformed to the evidence discovered by Plaintiff since the original Complaint was filed. "An amendment to the pleading to conform to the evidence in the case certainly does not change the scope of the case." *Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, LLC*, No. 09-CV-1426 JRT/SER, 2011 WL 2261298, at *4 (D. Minn. Mar. 21, 2011), *report and recommendation adopted sub nom.*, 2011 WL 2261284 (D. Minn. June 8, 2011).

Specifically with regard to the bad faith claim, Plaintiff's original complaint generally alleged that Defendant "acted in bad faith by failing and refusing to comply with [its] duties" to act in good faith in reviewing, investigating, evaluating, adjusting, and paying Plaintiff's UIM claim and that Defendant acted in violation of the Unfair Claims Settlement Practices Act, C.R.S. § 10-3-1104(1)(h), including, without limitation, by not attempting in good faith to effectuate a prompt, fair and equitable settlement of the claim despite liability being clear, and compelling its insured to institute litigation to recover the amount due under the insurance policy." [#5, ¶¶ 29, 30, 33] Plaintiff's original claim for bad faith thus was extremely broad. The Second Amended Complaint "makes the factual allegations

[regarding the bad faith claim] more specific" but it "does not alter the scope or the theories of the case."[10]  *Buffalo Wild Wings, Inc.*, 2011 WL 2261298, at *4.  Defendant thus is "not forced to respond to an entirely new cause of action or theory of recovery" as a result of the Second Amended Complaint and, accordingly, was not entitled to assert new affirmative defenses or counterclaims in response to the Second Amended Complaint without obtaining leave of the Court.  *Port-A-Pour, Inc.*, 2016 WL 1258552, at *3 (quoting *Woods*, 2014 WL 1213381, at *2); *cf. Hydro Eng'g, Inc.*, 2013 WL 1194732, at *4 (finding amended pleading to change the scope or theory of the case where it named two new defendants and added claims against the existing defendant for tortious interference, civil conspiracy, and fraud and thereby sought previously unforeseen requests for punitive damages).

Accordingly, the Court finds that Defendant's filing of the Amended Answer—which included an additional affirmative defense and new counterclaims—without obtaining

---

[10] In *Sands v. Integon National Insurance Company*, the plaintiff was granted leave to file a third amended complaint that added 21 new factual allegations and a request for punitive damages and, in response, the defendant—without leave of the court—filed an answer that asserted seven affirmative defenses that it had previously withdrawn.  No. 18-CV-00714-PAB-NYW, 2020 WL 8188183, at *2, *4 (D. Colo. June 12, 2020).  The plaintiff filed a motion to strike the reasserted affirmative defenses based upon the defendant's failure to seek leave to file.  *Id.* at *3. The magistrate judge to whom the motion to strike was referred found that the new factual allegations in the third amended complaint—which included allegations that the defendant insurer "denied [the plaintiff's] claims pursuant to a 'secret standard operating procedure,' performed no underwriting of either of her short-term medical insurance policies, had a business practice to search for any way to deny claims, told her inaccurate information about her policies, and misled her as to why her bills were not being paid and when they would be paid"—did not change the theory or scope of the plaintiff's claims and thus recommended that the motion to strike be granted.  *Id.* at *4.  Although the parties in *Sands* ultimately stipulated to the dismissal of the case before the presiding judge ruled on the objections to the recommendation, this Court finds the analysis in the recommendation in *Sands* persuasive and equally applicable to the facts here.

leave of the Court was procedurally improper and violated the Federal Rules of Civil Procedure.

**B.    Defendant's Request for Leave to File the Amended Answer**

In its response to the Motion, Defendant requests that, to the extent the Court finds that Defendant was required to obtain leave to file the Amended Answer, the Court grant Defendant such leave in connection with the Court's resolution of the instant Motion in the interest of judicial efficiency pursuant to Federal Rule of Civil Procedure 1.[11]  [#153 at 2]  More specifically, Defendant argues that "requiring [Defendant] to seek leave to amend at this stage would unnecessarily delay this case and be an inefficient use of the Court's and the parties' resources."  [*Id.* at 5]   As an initial matter, Defendant's request in its response to the current Motion that the Court grant it leave to file an amended answer that includes a new affirmative defense and new counterclaims directly contravenes this Court's local rules.  Pursuant to D.C.COLO.LCivR 7.1(d), "[a] motion shall not be included in a response or reply to the original motion" but instead must "be filed as a separate document."  *See also Woods*, 2014 WL 1213381, at *2 (finding the defendants' alternative argument in their response to a motion to strike that they should be granted leave to file their new counterclaims procedurally improper under the local rules, but agreeing to entertain it because trial was only two weeks away).

Although the Court may be willing to overlook such a procedural violation in the interest of judicial economy in an appropriate case, the Court does not find it appropriate to do so here.   Defendant contends that Plaintiff's Motion "asserts the procedural

---

[11] Rule 1 provides that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

arguments he could have made in response to a Rule 15 motion, including undue burden, bad faith, prejudice, and futility" [#153 at 6], but the Motion expressly states that its Rule 15 analysis "is not meant to be exhaustive" and that Plaintiff should be provided "an opportunity to respond in full" to a motion for leave to amend [#146 at 8; *see also* #154 at 6 (stating that Plaintiff "did not make all of his F.R.C.P. Rule 15 arguments in his Motion to Strike")]

Moreover, as Plaintiff points out, Defendant's attempt to obtain leave through its response to the Motion "ignores the very different standards applicable to the two different motions" and, due to the Court's page limitations, deprives the parties and the Court of the benefit of full briefing on the issue. [#154 at 6] In a case presenting a straightforward application of Rule 15, the Court may find this deficiency insignificant. Not so here, where, as explained in more detail below, Defendant seeks to add an affirmative defense and counterclaims based upon a seemingly novel interpretation of an insurance provision almost a full year after the lawsuit was originally filed and under circumstances that call into question Defendant's motive.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court is to freely allow amendment of the pleadings "when justice so requires." The grant or denial of an opportunity to amend is within the discretion of the Court, but "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously

allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993). Here, the Court finds that Plaintiff has raised viable concerns with regard to undue delay, undue prejudice, bad faith, and futility that are not adequately presented under the confines of the current procedural posture for this Court to resolve.

### 1.    Undue Delay

As the Tenth Circuit has explained, "[a] party who delays in seeking an amendment is acting contrary to the spirit of [Rule 15] and runs the risk of the court denying permission because of the passage of time." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quotation omitted). "The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (quotation omitted). The Court's inquiry into undue delay "focuses primarily on the reasons for the delay." *Id.* at 1206. "[D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" *Id.* (quoting *Frank*, 3 F.3d at 1365-66); *see also Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994) (holding that "unexplained delay alone justifies the district court's discretionary decision" to deny leave to amend even without a showing of prejudice).

Here, Defendant first raised the new affirmative defense and counterclaims in its answer to the Second Amended Complaint, which was filed on October 20, 2020.[12] [#110] The new affirmative defense and counterclaims are based upon Defendant's contention that Plaintiff concealed his "history of severe anger issues before the collision"

---

[12] Defendant contends that it first raised the counterclaims with Plaintiff during a meet and confer call on October 19, 2020. [#153 at 7]

when he allegedly made a claim for "personality changes and increased anger" in an email from his lawyer on August 16, 2019. [#136 at 34, 36, ¶¶ 25, 37, 39] Although Defendant speculates that "discovery will uncover further substantial but still-concealed facts demonstrating that [Plaintiff's] serious anger issues predated the accident," in the Amended Answer, the new affirmative defense and counterclaims are premised upon Plaintiff's failure to disclose the December 2015 Incident. [*Id.* at 36, ¶ 39; *see also id.* at 8, ¶ 55] Although Defendant does not specify in either the Amended Answer or the briefing on the Motion when Defendant became aware of the December 2015 Incident and thereby Plaintiff's failure to disclose it, in a Serious Loss Report dated April 3, 2020, Defendant indicates that it "ha[s] obtained criminal records showing that [Plaintiff] was charged prior to the subject accident with felony menacing and third-degree assault for domestic violence incidents." [#146-1 at 3] Defendant thus was aware of the facts that form the basis of its new affirmative defense and counterclaims for over six months before it first sought to assert them in the litigation.

Defendant offers no explanation for this delay. [#153] Instead, Defendant argues that there could be no undue delay, because the new affirmative defense and counterclaims were filed "almost two months before the deadline to amend pleadings, almost five months before the discovery cutoff, and before any depositions had taken place."[13] [*Id.* at 6] Defendant's argument ignores the Tenth Circuit's guidance that the

---

[13] Although Defendant contends that "[c]ourts have consistently rejected undue delay arguments in similar circumstances" [#153 at 6], it cites only two cases for that proposition and both addressed only the specific, inapposite facts before them. *See Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-cv-02757-WYD-KMT, 2010 WL 1905003, at *2 (D. Colo. May 12, 2010) (rejecting undue delay argument where motion to amend was filed when the case was "in its relative infancy"—less than five months after the action was initially filed and less than two months after the initial scheduling

inquiry into undue delay "focuses primarily on the reasons for the delay." *Minter,* 451 F.3d at 1206. Because Defendant's briefing on the Motion offers no explanation for its delay in bringing the new affirmative defense and counterclaims, the Court is unable to evaluate whether Defendant's delay constitutes undue delay. *See, e.g., Leatherwood v. Rios,* 705 F. App'x 735, 740 (10th Cir. 2017) (holding that where the moving party "knew or should have known of the facts upon which the proposed amendment is based but failed to include them in his original or [previously] amended [pleading], the motion to amend is subject to denial"); *Fed. Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987) ("[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

### 2. Undue Prejudice

Although a showing of prejudice is not required for the Court to deny a motion for leave to amend based upon undue delay, denial is also appropriate "[i]f the delay in

---

conference [*see* Docket for Case No. 09-cv-02757-WYD-KMT]); *Bd. of Cty. Comm'rs of Cty. of La Plata v. Brown Grp. Retail, Inc.,* No. CIV 08-CV-00855-LTB, 2009 WL 1706446, at *1 (D. Colo. June 16, 2009) (rejecting undue delay argument where deadline to amend pleadings and discovery had not yet expired, but also noting that plaintiff offered an explanation for the delay and there was no allegation of bad faith or dilatory motive). Moreover, Defendant's contention is inconsistent with the Tenth Circuit's instruction that the undue delay analysis should focus on the reason for the delay. For example, in *Llacua v. W. Range Ass'n,* the Tenth Circuit upheld the district court's denial of a motion to amend for undue delay where the "information set out in the [proposed amended pleading] was known or reasonably should have been known to the [moving party] at the time the [prior pleading] was filed" and thus it appeared that the moving party was engaging in "strategic gamesmanship" rather than "acting out of surprise or the acquisition of new information." 930 F.3d 1161, 1189 (10th Cir. 2019). Notably, at the time the district court denied the motion to amend in *Llacua,* the court had not yet even entered a scheduling order and discovery had been stayed. [*See* Case No. 15-cv-01889-REB-STV, Docket Nos. 112, 128, 173]

amending results in prejudice to the opposing party." *Fed. Ins. Co.*, 823 F.2d at 387. Undue prejudice is the "most important[ ] factor in deciding a motion to amend the pleadings." *Minter*, 451 F.3d at 1207. "Courts typically find prejudice only when the amendment unfairly affects the [opposing party] in terms of preparing their defense to the amendment." *Id.* at 1208 (quotation omitted). "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the [original pleading] and raise significant new factual issues." *Id.*

Here, Plaintiff alleges that the prejudice resulting from the proposed new affirmative defense and counterclaims is "apparent and substantial," because:

> not only does the new pleading substantially change and expand the scope of the case (which has been pending for approximately one (1) year, during which substantial written discovery has taken place . . . ), it now seeks to require production of his private marital counseling records, and perhaps the distraction of the jury from the conduct of the insurer to extremely unfairly prejudicial consideration of a very shameful, but irrelevant, mistake, a character attack which has nothing to do with his serious injuries caused by a high speed crash.

#146 at 7-8 (footnote omitted). In response, Defendant states only that no prejudice exists, because "the parties [have] not proceed[ed] with critical depositions, and the Court has not set a trial date." [#153 at 7] Defendant does not address the significant expansion of the factual and legal issues that the proposed additional affirmative defense and counterclaims raise or the potential resulting prejudice to Plaintiff based upon the parties' discovery to date and the sensitive (and otherwise irrelevant) nature of the subject matter of the alleged concealment. The Court thus finds the current briefing insufficient to allow the Court to fully address whether the proposed new affirmative defense and counterclaims would prejudice Plaintiff.

25

### 3.    Bad Faith

"An amendment adding causes of action will be denied if sought in bad faith." *Koch v. Koch Indus.*, 127 F.R.D. 206, 211 (D. Kan. 1989).   In *Koch*, the court indicated that a proposed amendment may be denied as brought in bad faith where the moving party had "[a]wareness of facts and fail[ed] to include them in the [original pleading because such failure] might give rise to the inference that the [moving party] was engaging in tactical maneuvers" and/or where the moving party is using the amendment "to fulfill their apparent wish of conducting open-ended discovery." *Id.* at 211-12 (quotation omitted).

Here, Plaintiff contends that "the new defense and counterclaims were pled for the purpose of creating a new reason to gain access to Plaintiff's private, confidential counseling records—harassment of Plaintiff—and not for any legitimate purpose."[14] [#146 at 7]  As noted above, Defendant had access to the information that forms the basis of its new affirmative defense and counterclaims for at least six months prior to asserting them and has offered no explanation for the delay.  In response to Plaintiff's contention

---

[14] As noted above, at a Discovery Hearing on October 20, 2020, the Court ordered the parties to further meet and confer with regard to Defendant's request for the production of Plaintiff's psychological treatment records in light of Plaintiff's representation that he would withdraw any claims based upon anger issues.  [#121 at 30-31]  Plaintiff contends that Defendant filed the new affirmative defense and counterclaims shortly after the hearing to provide an additional basis for discovery of the treatment records and that Defendant argued during the subsequent conferral that it was entitled to the records due to the counterclaims.  [#146 at 7]  Defendant contends that the filing of the new affirmative defense and counterclaims was not a response to the Court's ruling at the Discovery Hearing, as evidenced by the fact that Defendant discussed its intent to file them with Plaintiff the day before the Discovery Hearing.  [#153 at 7]  That Defendant contemplated filing the new affirmative defense and counterclaims prior to the Discovery Hearing does not necessarily prove that Defendant's motive in filing them was not to inject and obtain discovery on issues not otherwise properly brought into the litigation that would embarrass Plaintiff, especially given that Defendant could not know how the Court would rule on the discovery dispute.

of bad faith, Defendant fails to offer any explanation for why it asserted the new affirmative defense or counterclaims.[15]  [#153 at 6-7]  Instead, Defendant argues only that Plaintiff "bears the burden to prove 'bad faith'" and that Plaintiff "cites no actual evidence . . ., as is required to defeat a pleading amendment for bad faith."  [*Id.*]  Defendant's argument that Plaintiff has not sustained its burden in proving bad faith does nothing to establish that Defendant should be granted leave to file the Amended Answer without formally moving for leave to do so, but instead only highlights the need for full briefing on the issue. The Court thus concludes that the current record is insufficient to allow the Court to assess whether the proposed new affirmative defense and counterclaims were asserted in bad faith.

### 4.    Futility

Where a proposed pleading, "as amended, would be subject to dismissal, leave to amend need not be granted."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (quotation omitted).  "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim" pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999)

Based upon the current allegations and briefing, the Court understands Defendant's new affirmative defense and counterclaims to allege that Plaintiff violated the Concealment Provision of the insurance policy by failing to voluntarily disclose his prior

---

[15] With regard to the timing of its assertion of the new affirmative defense and counterclaims, Defendant states only that Defendant "planned to file its counterclaims well before the discovery conference regarding [Plaintiff's] mental health records" without identifying a specific timeframe or event that precipitated the decision.  [#153 at 7]

history of "severe anger issues" when making a claim for damages based upon "increased anger" following the collision.  [*See* #136 at 29, 33-36]  Defendant appears to argue that Plaintiff's failure to make this voluntary disclosure constituted a material breach of the insurance policy even though: (1) Defendant never requested any information regarding Plaintiff's history of "anger issues;" (2) certain of the allegedly concealed information was publicly available and Defendant, in fact, did obtain access to that information;[16] and (3) Defendant did not change its valuation of Plaintiff's claim based upon his alleged claim of damages for "increased anger"—*i.e.*, even without the benefit of Plaintiff's voluntary disclosure of the allegedly concealed information, Defendant determined that Plaintiff's claim for damages for "increased anger" had no value.  Even though the alleged concealment related only to Plaintiff's failure to disclose information about his alleged claim for "increased anger," Defendant seeks to deprive Plaintiff of *any* benefits under the insurance policy.  [*See* #153 at 13 (arguing that violation of the Concealment Provision "absolves [Defendant] of the responsibility to pay for '**any** loss or damage . . .'" (emphasis in original))]  Defendant thus appears to argue that the Concealment Provision imposes on the insured a duty to anticipate and voluntarily disclosure any information that the insurer may deem material to the claim at the time the claim is filed and that failure to do so deprives the insured of any benefits under the policy.

Plaintiff contends that Defendant's proposed affirmative defense and counterclaims constitute a "radical new idea" that is unsupported by any caselaw and that "would violate established public policy and establish a new 'variable' standard which

---

[16] Defendant argues that its affirmative defense and counterclaims do not require a showing of "ignorance or falsity" of the concealed information or a showing that Defendant actually attached any significance to the undisclosed information.  [#153 at 9, 11]

would substantially chill any plaintiff's right to a remedy for tort." [#154 at 3] The Court agrees that none of the cases cited by Defendant in support of its affirmative defense and counterclaims considered a similar theory of concealment. [See #153 at 7-14] In *Sunflower Condominium Association, Inc. v. Owners Insurance Co.*, the defendant insurer asserted counterclaims for breach of a fraud/concealment provision similar to that at issue here, but the insurer alleged the insured violated that provision by "misrepresent[ing] the date when [the insured] first knew or should have known that a hailstorm may have damaged the subject property" and "attempt[ing] to maximize or inflate the cost of the claim." No. 16-CV-2946-WJM-NYW, 2018 WL 2196089, at *2 (D. Colo. May 14, 2018), aff'd, 802 F. App'x 376 (10th Cir. 2020). In *Wagnon v. State Farm Fire & Casualty Co.*, the Tenth Circuit found that the defendant had introduced sufficient evidence to establish that the insured "knowingly and deliberately" made misrepresentations regarding the items he alleged had been stolen and "conceal[ed] . . . the means to verify his statements" and thus the insurance policy was void. 146 F.3d 764, 769, 771 (10th Cir. 1998). In *Martinez v. Hartford Underwriters Insurance Co.*, the Court found that the insurer was entitled to summary judgment on its claim that the insured violated the insurance policy's fraud provision where the undisputed evidence showed that the insured made misrepresentations to the insurer in response to questions from the insurer regarding how the allegedly stolen property had been used and the insured's knowledge of a potential suspect for the theft of the property. No. 12-CV-02405-MJW, 2014 WL 2016569, at *5 (D. Colo. May 15, 2014). None of the cases cited by Defendant involves the alleged concealment of information that was not specifically requested by the insurer—let alone the alleged concealment of information that was

already known or available to the insurer and that ultimately had no effect on the insurer's valuation of the claim.

Particularly given the lack of any apposite authority, the Court has serious concerns about the implications of the recognition of Defendant's new affirmative defense and counterclaims. Although the insurer has an obligation to conduct a prompt and reasonable investigation into a claim and is obviously in a better position than the insured to identify the information the insurer believes relevant to the adjustment of a claim,[17] Defendant's theory appears to place the onus on the insured to identify and provide all information that may "be important to a reasonable insurer analyzing such a claim" or that is "reasonably relevant to [the insurer's] analysis" of the claim. [#153 at 9-10] Under Defendant's proposed theory, the insured thus seemingly would need to identify and provide all of his or her physical and mental healthcare records to the insurer at the time a claim is originally filed to prevent an argument that the insured failed to disclose some information about a prior injury that the insurer believes is relevant to the valuation of the claim. Even more troubling, Defendant's theory would create a perverse incentive for the insurer to pursue information about an insured's claim from sources other than the insured in the hope of discovering information that the insured had not volunteered and thereby create an argument that the insurer has no liability under the policy based upon the insured's alleged "concealment."

---

[17] Pursuant to the Unfair Claims Settlement Practices Act, it is an unfair claim settlement practice for an insurer to "fail[ ] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" or to "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(h)(III), (IV).

Given the apparent novel nature of Defendant's theory and the significant public policy implications, the Court concludes that Defendant must seek leave to add the new affirmative defense and counterclaims so that the Court can assess their potential futility with the benefit of full briefing addressing these concerns.

### 5. Conclusion

Accordingly, the Court concludes that: (1) Defendant was required to seek leave to file the new affirmative defense and counterclaims contained in the Amended Answer, (2) Defendant's request contained in its response to the Motion that the Court grant it leave to do so is procedurally improper, and (3) even if the Court were inclined to consider Defendant's request, the current record is insufficient to allow full and fair consideration of the request. *See Dakota Station II Condo. Ass'n, Inc.*, 2016 WL 9735776, at *4 (concluding that defendant was required to seek leave to assert new affirmative defenses and declining to address parties' cursory arguments regarding whether defendant would be entitled to such leave). The Court thus GRANTS the Motion to the extent it seeks to strike the Amended Answer and DENIES AS MOOT the Motion to the extent it seeks dismissal of the new affirmative defense and counterclaims asserted in the Amended Answer, and STRIKES the Amended Answer without prejudice to Defendant filing a motion for leave to file an amended answer and counterclaims pursuant to Rule 15.[18]

---

[18] The Court agrees with other decisions in this District finding that "rather than striking the new defenses and counterclaim, the better course is simply to strike the entire pleading." *Port-A-Pour, Inc.* 2016 WL 1258552, at *4; *see also Woods*, 2014 WL 1213381, at *3 (striking answer that included new affirmative defense without leave of court and directing defendant to refile their answer).

**C.    Plaintiff's Request to Remove Certain Allegations from the Public Record as Scandalous and Impertinent**

Plaintiff also seeks to strike certain allegations in the Amended Complaint related to the December 2015 Incident as scandalous and impertinent, arguing that they "are not necessary for the counterclaims, and instead appear aimed at embarrassing Plaintiff by publicly amplifying [the] dismissed [criminal] charges." [#146 at 14]  Although Plaintiff's request to strike these specific allegations is moot in light of the Court's order striking the Amended Answer in its entirety, Plaintiff's concern regarding the public amplification of these allegedly scandalous and impertinent allegations is not abated because documents stricken from the record typically remain in the publicly-available docket to preserve the entire record for appeal.   In its response to the Motion, Defendant argues that the allegedly scandalous and impertinent allegations are relevant and necessary, and already part of the public record in the criminal case that resulted from the December 2015 Incident. [#153 at 14]  Nonetheless, Defendant represents that it has no objection to the allegations being filed under restriction pursuant to D.C.COLO.LCivR 7.2. [*Id.* at 15] Although Plaintiff states in his reply that striking rather than restricting public access to the allegations is the appropriate remedy pursuant to Rule 12(f) [#154 at 10], as noted above, documents stricken from the record typically remain publicly accessible on the Court's docket and part of the historical record in case of appeal.   Nor does Plaintiff explain why restriction is inadequate or identify any prejudice that would result from the allegations being restricted rather than entirely removed from the docket.

Accordingly, the Court ORDERS that both of the filings containing the allegedly scandalous and impertinent allegations—*i.e.*, Defendant's Answer to Second Amended

Complaint, Counterclaims, and Jury Demand [#110] and the Amended Answer [#136]—
shall be placed under Restriction Level 1.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Strike, or in the Alternative, to Dismiss Amended Counterclaims and New Affirmative Defense Pursuant to Fed. R. Civ. P. 12(b)(6) and (f) (the "Motion") [#146] is **GRANTED** to the extent it seeks to strike the Amended Answer and **DENIED AS MOOT** in all other respects.  **IT IS ORDERED:**

(1)     Defendant's Amended Answer to Second Amended Complaint, Counterclaims and Jury Demand [#136] is **STRICKEN** without prejudice to Defendant filing a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15 that addresses the issues identified in this Order;

(2)     The Clerk of Court is directed to place Defendant's Answer to Second Amended Complaint, Counterclaims, and Jury Demand [#110] and Defendant's Amended Answer to Second Amended Complaint, Counterclaims and Jury Demand [#136] under **RESTRICTION LEVEL 1**; and

(3)     On or before **June 2, 2021**, Defendant **SHALL FILE** either: (a) a motion for leave to file an answer that includes the new affirmative defense and counterclaims pursuant to Rule 15, or (b) an answer to Plaintiff's Second Amended Complaint that does not include the new affirmative defense and counterclaims.

DATED: May 19, 2021                    BY THE COURT:

                                       s/Scott T. Varholak
                                       United Stated Magistrate Judge